# IN THE COURT OF APPEALS OF IOWA

No. 19-1834
Filed April 15, 2020

**IN THE INTEREST OF C.Z.,**
**Minor Child,**

**D.Z., Mother,**
     Appellant.

_____

Appeal from the Iowa District Court for Polk County, Susan Cox, District Associate Judge.

A mother appeals the termination of her parental rights. **AFFIRMED.**

Daniel M. Northfield, Urbandale, for appellant mother.

Thomas J. Miller, Attorney General, and Gretchen Witte Kraemer, Assistant Attorney General, for appellee State.

Erin Mayfield of Youth Law Center, Des Moines, attorney and guardian ad litem for minor child.

Considered by Bower, C.J., and Greer and Ahlers, JJ.

**BOWER, Chief Judge.**

A mother appeals the termination of her parental rights to her child, C.Z.[1] She contends termination of her parental rights is not in the child's best interests and asks for an extension of time to achieve reunification with the child. On our de novo review, *see In re A.M.*, 843 N.W.2d 100, 110 (Iowa 2014), we conclude termination of the mother's parental rights is in the child's best interests.

The mother became involved with the department of human services (DHS) with respect to her older child, M.C., in March 2017 after police responded to a domestic-violence call. On April 25, police were twice called to the home; first for a report of on-going domestic violence, and later when the paternal grandfather reported the mother was "drunk and high on meth," and he was concerned about her three-year-old child. The child was removed from the parents' home in May and adjudicated a child in need of assistance (CINA) due to the parents' domestic violence and substance-abuse problems. Services were offered to address the mother's issues of domestic violence and alcohol and methamphetamine abuse.

Over the next several months, the mother did not consistently participate in the services provided by DHS or comply with the terms of her probation. She continued to use methamphetamine and abuse alcohol. In January 2018, the mother was unsuccessfully discharged from treatment services at the House of Mercy (HOM) for failing to provide required urinalyses (UAs) and for inconsistent attendance. The mother was arrested on theft charges twice. A report of probation violations was filed, recommending a residential-treatment program. In March, she

---

[1] The State did not seek to terminate the father's parental rights in these proceedings.

again admitted using drugs and was upset when her probation officer requested she begin inpatient treatment.  The mother's mental-health therapist reported she had been "sporadic with attendance."  The mother periodically attended visits with M.C.  She continued to struggle with substance abuse, mental health, and housing.  On June 17, the mother's rights to M.C. were terminated pursuant to Iowa Code section 232.116(1)(h) and (*l*)[2] (2018)—she was pregnant at the time.

The mother again began inpatient substance-abuse treatment at HOM on August 24.  Unfortunately, she was unsuccessfully discharged one month later because she could not follow through with program expectations.  The mother was in jail three times between June and October while pregnant with C.Z.

C.Z. was born in November and the infant's umbilical cord tested negative for illegal substances.  Due to the recent termination of the mother's parental rights to M.C. and her history of substance abuse, C.Z. was placed in foster care after discharge from the hospital.

A family team meeting was held on November 26.  Notes from the meeting state:

> [The mother] reports that she has been clean for over 100 days.  [The mother] had a substance abuse evaluation at [HOM] on 10-30-18.  They recommended outpatient treatment.  [The mother] began outpatient treatment at HOM.  She has individual treatment on Tuesdays and groups on Sundays.  [The mother] has to call daily for random UAs at HOM.  [The mother] reported that she feels like she is doing great.  She said that who she was before is not who she is

---

[2] The juvenile court found the mother has a severe substance-related disorder and presents a danger to self and others as evidenced by prior acts.  The court specifically found: "The mother's ongoing substance abuse clearly presents a danger to herself.  The court is extremely concerned she may be seriously injured or killed. . . .  She desperately needs a long term treatment program and will not be available to parent for a long time."

now. [The mother] relayed that having resolved her criminal charges has reduced much of her stress.

The mother had visits with the child four times per week for one hour until December. The child was adjudicated a CINA on December 18. DHS was unable to contact the mother from December 18, 2018, to January 15, 2019.

The case worker spoke with the mother on January 15, 2019, at which time the mother indicated she was so depressed she could not get out of bed and cried all the time but was not seeing anyone for counseling. The case worker provided the mother with therapy resources and later spoke with the Family Safety, Risk and Permanency (FSRP) provider about helping the mother make a mental-health and medication-management appointment. Initially, the mother engaged in substance-abuse treatment at the HOM; however, she was not consistently meeting with her providers and was not providing drug screens as requested. The mother saw her child on January 16. Despite the FSRP worker's efforts at setting up visits between mother and child and to assist the mother in setting up medical-management and counseling sessions, the mother struggled to attend visits and did not follow through with mental-health treatment.

The child's placement in foster care was confirmed by dispositional order. The mother did not appear at the hearing and the court was informed there was an active warrant for her arrest. The mother had not been participating in substance-abuse treatment, had lost her job, and was in temporary housing.

In February, the mother informed her case worker she was working on obtaining bail money and evidence to support that she was not guilty of the crime that led to the arrest warrant. She told the case worker she was planning on turning

herself in once she obtained those two things. The mother did not take advantage of the case worker's offer to assist.

A permanency hearing was scheduled for April 1. The mother did not appear and her attorney reported there were active warrants for her arrest. The hearing was rescheduled for April 11. In a permanency order filed in May, the court specifically found: "The mother has stopped participating in all services. The mother still has an active warrant out for her arrest" on multiple charges. The court ordered the State to file a petition to terminate the mother's rights.

The mother was arrested on April 17 and was released from jail on June 14. On June 17, the mother called her FSRP provider and requested that visits resume with C.Z. On June 24, her DHS case worker advised the mother that in order to re-initiate visits, she must set up Child-Parent Psychotherapy since she had not seen the child since January.

The termination hearing was held on July 23. The DHS case worker—who had also been involved with the family during the prior termination proceedings—recommended termination of the mother's rights "[g]iven the lack of participation and progress that [the mother] has made, ongoing criminal activity, unaddressed mental health and substance abuse needs, and her history with the department." The case worker testified the mother had admitted ongoing use of illegal substances until April 2019. The worker stated the child is doing well and is integrated into the foster family, who expressed the willingness to continue to care for the child and to adopt in the event both parents' rights were terminated.

The mother testified visits had not resumed, but she was on a waiting list for Child-Parent Psychotherapy. She acknowledged using methamphetamine in

mid-April and stated she recently signed up for substance-abuse and mental-health programming and was waiting to obtain evaluations. The mother testified she was employed and was living in her father's home. She testified she did not have a current substance-abuse problem but was willing to engage in treatment to satisfy DHS. The mother was asked if she felt the child could be returned to her at present and the mother responded: "Yes. . . . Yes, I think it would help me honestly. . . . I'm her mother, and once you have a child that bond just doesn't go away. It's—we both need each other, and I think that it would only better me."

The guardian ad litem recommended termination of the mother's parental rights:

> due to the mother's lack of engagement in the services and even participation in visits, which occurred even prior to any type of suspension by DHS due to the active warrant, there was still a lack of consistent participation in visits that were offered as outlined by the FSRP reports along with the mother's lack of insight into her substance abuse and mental health issues which in turn have an [e]ffect on home life, health and safety and well-being as well as the lack of insight as to how those issues affect the safety of this child.

The juvenile court found clear and convincing evidence to support termination of the mother's rights pursuant to Iowa Code section 232.116(1)(e), (g), and (h) (2019).

The mother appeals, asserting termination is not in the child's best interests.

We generally use a three-step analysis to review the termination of a parent's rights. *In re A.S.*, 906 N.W.2d 467, 472 (Iowa 2018). We determine: (1) whether grounds for termination have been established, (2) whether termination is in the child's best interests, and (3) whether we should exercise any of the permissive exceptions to termination. *See id.* at 472–73. Here, the mother

does not contest the grounds for termination and therefore we need not address that step in the analysis.  *See In re P.L.*, 778 N.W.2d 33, 40 (Iowa 2010).  Rather, she argues termination of her parental rights is not in the child's best interests.

In determining whether the termination of a parent's rights is in a child's best interests, our primary considerations are "the child's safety," "the best placement for furthering the long-term nurturing and growth of the child," and "the physical, mental, and emotional condition and needs of the child."  Iowa Code § 232.116(2).  The "defining elements in a child's best interests" are the child's safety and "need for a permanent home."  *In re H.S.*, 805 N.W.2d 737, 748 (Iowa 2011) (citation omitted).  We adopt the juvenile court's findings:

> Termination of [the mother's] parental rights is in the child's best interest and less detrimental than the harm caused by continuing the parent-child relationship.  There are no compelling reasons to maintain the parental rights and no exceptions that outweigh termination being in the child's best interest. The child's safety can best be ensured by termination.
> . . . .
> . . . . The court has considered that the father's [termination-of-parental-rights] trial was continued.  First, that is not a legal basis to not terminate the mother's parental rights.  Second, it remains in C.Z.'s best interest for the court to terminate the mother's parental rights.  The mother prioritized her arrest warrant and her freedom—instead of visiting with C.Z. and/or participating in services.  During that time period, the mother chose not to engage in services or work on the significant substance abuse and mental health issues—which the court is extremely concerned will end her life.  She admitted she continued to use meth on a daily basis.

We add that we are concerned by the mother's lack of insight of the effects her unresolved substance-abuse and mental-health issues have on her ability to safely and consistently parent.  We, like the juvenile court, encourage the mother to participate in services.  We affirm the termination of the mother's parental rights.

**AFFIRMED.**